UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

METROPOLITAN LIFE INSURANCE
COMPANY,

    Plaintiff,

v.

JOSEPH CHAVEZ,
ALISHA CHAVEZ, AND
JESSICA CHAVEZ,

    Defendants.

Case No.

---

BODMAN PLC
By:    Erica J. Shell (P80106)
        Emily P. Jenks (P84497)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
(313) 259-7777
eshell@bodmanlaw.com
ejenks@bodmanlaw.com
Attorneys for Plaintiff

---

## COMPLAINT IN INTERPLEADER

Plaintiff Metropolitan Life Insurance Company ("MetLife"), through undersigned counsel, hereby files this Complaint in Interpleader and states as follows:

## PARTIES

1. MetLife is a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York. It is duly licensed to do business in the State of Michigan.

2. Upon information and belief, Defendant Joseph Chavez ("Joseph") is the son of Thomas Chavez ("the Decedent"), is a resident of the State of Michigan, and is domiciled in Saline, Michigan.

3. Upon information and belief, Defendant Alisha Chavez ("Alisha") is the daughter of the Decedent and is a citizen and resident of Lansing, Michigan, which is in this Judicial District.

4. Upon information and belief, Defendant Jessica Chavez ("Jessica") is the daughter of the Decedent and is a citizen and resident of Lansing, Michigan, which is in this Judicial District.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action, pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. Further, this is an interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure.

6. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1397, and 28 U.S.C. § 1391(b), because a defendant resides within this district and all of the defendants reside in the State of Michigan. A substantial part of the events giving rise to this action occurred in this district.

## CAUSE OF ACTION IN INTERPLEADER

7. The Decedent Thomas Chavez was an employee of General Motors Company ("General Motors") and a participant in the General Motors Plan ("the Plan"), Group No. 0003200. A copy of the Plan is attached as **Exhibit A**.

8. The Plan is an ERISA-governed employee welfare benefit plan sponsored by General Motors and funded by a group life insurance policy issued by MetLife.

9. MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan.

10. ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

11. The Decedent died on July 10, 2020 due to multiple gunshot wounds. His death was ruled a homicide. *See* **Exhibit B,** Death Certificate. Joseph was charged with the Decedent's murder and was later deemed not competent to stand trial.

12. On May 26, 2022, Joseph entered a plea of not guilty by reason of insanity, which was accepted by the Ingham County Circuit Court. Joseph was remanded to state custody for mental health treatment. *See* **Exhibit C**, Commitment Order.

13. As of the date of this interpleader complaint, no guardian or conservator has been appointed to represent Joseph's interests.

14. In a letter dated August 24, 2023, Joseph's public defender informed MetLife of Joseph's plea entry and advised that the plea entry is not appealable. *See* **Exhibit D,** Correspondence from Ingham County Office of the Public Defender.

15. At the time of his death, the Decedent was enrolled in the Plan for Basic Life insurance in the amount of $61,000, and Accidental Death and Dismemberment benefits in the amount of $30,500. Together, the Plan's benefits total $91,500 ("The Benefits").

16. The Decedent named his three children—Alisha, Jessica, and Joseph—as beneficiaries. *See* **Exhibit F**, Beneficiary Designations Dated October 27, 2010.

17. Under the terms of the Plan, the Benefits became payable upon the Decedent's death. While Joseph's trial was pending, MetLife paid to Alisha and

Jessica their uncontested Benefits shares of $30,195.00 and $31,110.00, respectively. The remaining share totals $30,195 ("the Remaining Benefits").

18.   MetLife did not pay Joseph the Remaining Benefits because under Michigan's slayer statute, MCL 700.2803, Joseph would not be entitled to his share of the Benefits if he "feloniously and intentionally kill[ed]" the Decedent.

19.   MCL 700.2803 states that "[a]n individual who feloniously and intentionally kills or who is convicted of committing abuse, neglect, or exploitation with respect to the decedent forfeits all benefits under this article with respect to the decedent's estate. . . ."

20.   Under MCL 700.2803(6), an individual's interest to the property of an estate is not forfeited until "[a]fter all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing . . . of the decedent conclusively establishes the convicted individual as the decedent's killer", or, "in the absence of a conviction, the court, on the petition of an interested person, shall determine whether, under the preponderance of the evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent." *Id.*

21. MetLife is unable to determine whether Michigan's slayer statute would prohibit Joseph from receiving the Remaining Benefits now that the Court has accepted an entry of not guilty by reason of insanity because the statute requires that the killing be "felonious[] and intentional[]."

22. One of the findings that a court must make when accepting a plea of not guilty by reason of insanity is that the defendant actually committed the crime: "[b]efore accepting a plea of not guilty by reason of insanity, the court must examine the psychiatric reports prepared and hold a hearing that establishes support for findings that (1) <u>the defendant committed the acts charged</u>, and (2) that, by a preponderance of the evidence, the defendant was legally insane at the time of the offense." MCR 6.304(C) (emphasis added).

23. Although the Ingham County Circuit Court found that Joseph had committed the underlying crime, Michigan's slayer statute disqualifies Joseph from receiving the Remaining Proceeds only if his killing of the Decedent was "felonious[] and intentional[]." MCL 700.2803. It is not clear whether the legislature intended that a guilty plea by reason of insanity would trigger the slayer statute. Nor is it clear whether the Circuit Court's finding that Joseph had committed the crime, alone, would satisfy the felonious and intentional elements of the statute.

24. At least one Michigan court has noted this lack of clarity in the statute as written, as well as the lack of caselaw interpreting its language. *See Fid. Life Ass'n v. Amstutz*, Case No. 16-cv-12618, 2016 U.S. Dist. LEXIS 161482, at *2-3 (E.D. Mich. Nov. 22, 2016) ("Under Michigan law, however, the issue of whether a person who kills an insured, but is found not guilty by reason of insanity, may recover benefits is unclear, as the statute provides that the murderer must have acted 'feloniously and intentionally.' Mich. Comp. Laws § 700.2803(1). Although no Michigan court has squarely addressed the issue, the plain language of the statute suggests that where a killer is found not guilty by reason of insanity, he may still recover death benefits.") (dictum) (attached as **Exhibit E**).

25. Therefore, MetLife cannot ascertain whether Joseph is disqualified from receiving the Remaining Benefits by application of MCL 700.2803(6).

26. If a court were to determine that Joseph's interest in the Remaining Benefits is forfeited based on MCL 700.2803(6), then the Remaining Benefits would be distributed equally to the other two Beneficiaries--Alisha and Jessica.

27. As a mere stakeholder, MetLife has no interest in the Benefits (except to recover its attorney's fees and costs of this action). MetLife therefore respectfully requests that this Court determine to whom the Remaining Benefits at issue should be paid.

28. MetLife is ready, willing, and able to pay the Remaining Benefits, in accordance with the terms of the Plan, in such amounts and to the Court's Registry or to whichever Defendant(s) the Court shall designate.

29. MetLife has not brought and does not bring this Complaint for Interpleader at the request of any of the Defendants; there is no fraud or collusion between MetLife and any of the Defendants; MetLife has not been indemnified by any of the Defendants with respect to the matters involved in this case; and MetLife brings this Complaint for Interpleader of its free will so as to avoid being vexed and harassed by conflicting and multiple claims.

30. MetLife will deposit into the Registry of the Court the Remaining Benefits, plus any applicable interest due and owing under the terms of the Plan, less any award of its costs and attorney fees, for disbursement in accordance with the Judgment of this Court.

THEREFORE, MetLife requests entry of an order or orders:

(i) Restraining and enjoining the Defendants, and any other persons as may appear to have an interest in the Remaining Benefits, and who may subsequently appear as parties in this case, from instituting any action or proceeding in any state or United States court against MetLife, General Motors or the Plan for the recovery of the Remaining Benefits by reason of the death of the Decedent;

(ii) Requiring that Defendants litigate or settle and agree between themselves their claims for the Remaining Benefits, or upon their failure to do so, that this Court determine to whom the Remaining Benefits, plus any applicable interest, should be paid;

(iii) Permitting MetLife to pay into the Registry of the Court the Remaining Benefits, plus any applicable interest, less any award of its costs and attorneys' fees incurred in bringing this action;

(iv) Determining to whom the Remaining Benefits are due and owing;

(v) Dismissing MetLife with prejudice from this action and discharging MetLife, General Motors, and the Plan from any further liability to Defendants, to any other such persons who may appear to have an interest in the Remaining Benefits and who may subsequently appear as parties in this case, and to all other persons whatsoever from any and all claims to the Remaining Benefits at issue, upon payment of the Remaining Benefits, plus any applicable interest, and less any award of attorneys' fees and costs, into the Registry of this Court, or as otherwise directed by this Court;

(vi) Awarding MetLife its costs and attorney fees; and

(vii) Awarding MetLife such other and further relief as this Court deems proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BODMAN PLC |
|  | /s/ Erica J. Shell<br>Erica J. Shell (P80106)<br>Emily P. Jenks (P84497)<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, MI 48226<br>(313) 259-7777<br>eshell@bodmanlaw.com<br>ejenks@bodmanlaw.com<br>Attorneys for Plaintiff |
| Dated:   December 12, 2023. |  |

4885-9881-5114_2

10